IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

REY FRANCISCO QUIÑONES-MEDINA

Petitioner

vs                                                                CIVIL 09-2198CCC

UNITED STATES OF AMERICA

Respondent

**OPINION AND ORDER**

Before the Court is Petitioner Rey Francisco Quiñones-Medina's (hereinafter "Petitioner" or "Quiñones-Medina") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (docket entry 1). Petitioner, a prisoner appearing pro se, also filed a supporting brief. Respondent filed a Response to the Petition (docket entry 6), to which Petitioner replied (docket entry 7). For the reasons discussed below, the petition is DENIED.

I.   **BACKGROUND**

On October 13, 2004, a federal Grand Jury returned a three (3) count Indictment against Quiñones-Medina and one (1) other co-defendant (Crim.D.E.17)[1]. Count one (1) of the Indictment charged that from on or about July 20, 2004, to on or about September 22, 2004, in the District of Puerto Rico and within the jurisdiction of this Court, the Defendants knowingly and intentionally combined, conspired and agreed with each other, and with other persons known and unknown to the Grand Jury, to posses with the intent to distribute five (5) kilograms or more of a mixture or substance containing cocaine, a Schedule II Narcotic Drug Controlled Substance in violation of Title 21, United States Code, Section 841(a)(1) and 846. Count Two of the Indictment charged that on or about September 22, 2004, in the District of Puerto Rico and within the jurisdiction of this Court, the defendants aiding and abetting each other, did knowingly and intentionally posses with

_____

[1]Crim. D.E. is the abbreviation for the docket entry in Petitioner's criminal case, Crim. No. 04-368(CCC).

CIVIL 09-2198CCC                                    2

the intent to distribute one (1) kilogram (gross weight) of a mixture or substance containing cocaine, a Schedule II Narcotic Drug Controlled Substance in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.  Petitioner was not charged in Count Three of the Indictment which charged a violation of Title 18, United States Code, Section 924(c)(1)(A) (Crim. D.E. 17).

From December 8, 2005, through December 16, 2005, a jury trial was held for Quiñones-Medina (Crim. D.E. 116, 118, 122, 124, 127, 131).[2]  On December 16, 2005, a jury returned a verdict of guilty against Quiñones-Medina, as to both Counts I and II of the Indictment (Crim. D.E. 127).  On April 13, 2006, Petitioner's Pre Sentence Report was filed with the Court (Crim. D.E. 144).  On April 18, 2006, Quiñones-Medina, through his counsel, filed his Objections to the Pre Sentence Report (Crim. D.E. 147).  On May 30, 2006, this Court ordered the United States to file its Response to Petitioner's Objections to the Pre Sentence Report (Crim. D.E. 155).  On June 7, 2006, in compliance with this Court's order the Government filed its Response to Petitioner's Objections to the Pre Sentence Report (Crim. D.E. 157).

On September 14, 2006, the Court entered an Order granting in part and denying in part Quiñones-Medina's Objections to the Pre-Sentence Report (Crim. D.E. 164).[3]  On September 28, 2006, in a pro-se manner, Quiñones-Medina filed an Informative Motion objecting to the Court's order of September 14, 2006, regarding its findings as to the previously filed objections to the Pre-Sentence Report (Crim. D.E. 165).  On October 11, 2006, the Court struck from the record said Informative Motion (Crim. D.E. 167).  On November 14, 2006, Petitioner, through his counsel, filed a Motion for Continuance of

---

[2]On September 30, 2005, Petitioner's co-defendant plead guilty pursuant to Plea Agreement with the Government (Crim. D.E. 96 and 100).

[3]The items granted by the Court were corrections to the factual basis described in the Pre-Sentence Report.  Objections to Quiñones-Medinas guideline calculations as to upward adjustments etc. were denied by the Court (Crim. D.E. 164).

CIVIL 09-2198CCC                              3

Sentencing Hearing alleging he was receiving psychiatric treatment and was entitled to a
diminished capacity adjustment (Crim. D.E. 172).   On November 14, 2006,
Quiñones-Medina, through his counsel, filed a Sentencing Memorandum alleging further
downward adjustments to his sentence based on the provisions of the "safety valvue"
(Crim. D.E. 173).  On November 16, 2006, the Court issued an order re-setting Petitioner's
sentencing hearing and ordering that Quiñones-Medina's records of mental treatment be
submitted in sealed form to the Court.

On December 8, 2006, Petitioner, again in <u>pro-se</u> form, filed a motion for new counsel
alleging his counsel had mishandled the information as to his mental health
(Crim. D.E. 176).   On December 21, 2006, this Court entered an Order regarding
Quiñones-Medina's sealed request for downward departure and his request for downward
departure due to diminished mental capacity (Crim. D.E. 182).  On December 21, 2006, this
Court entered and order granting the request for new appointment of counsel and ordered
that a CJA attorney be appointed (Crim. D.E. 183).

On December 31, 2006, Quiñones-Medina's new CJA attorney filed his Notice of
Appearance (Crim. D.E. 185).  Among the filings made by Petitioner's new attorney was the
request for appointment of an expert witness for the issue of Quiñones-Medina's mental
capacity (Crim. D.E. 191).  On February 1, 2007, the Court Ordered the Government to
express its position on the matter (Crim. D.E. 194).  On February 15, 2007, the Government
filed its response (Crim. D.E. 195).  On May 1, 2007, the Court then issued an Order
denying Petitioner's request for appointment of an expert (Crim. D.E. 196).  On May 4, 2007,
Quiñones-Medina filed a Motion for reconsideration of said order (Crim. D.E. 197).  On the
same date Quiñones-Medina filed a Motion to Continue the Sentencing Hearing
(Crim. D.E. 198).

On May 16, 2007, the Court issued an Order to the U.S. Probation Officer to report
whether all mental health records of Petitioner had been located and admonishing

CIVIL 09-2198CCC                              4

Petitioner's counsel to submit all documents in his possession pertaining to Quiñones-Medina's mental health treatment within twenty (20) days after notice (Crim. D.E. 199). On June 15, 2007, the U.S. Probation Officer filed its compliance with the previously stated order (Crim. D.E. 202). On August 31, 2007, this Court issued an Order based on the totality of the medical records submitted, denying Petitioner's request for reconsideration as to the hiring of an expert related to Quiñones-Medina's mental capacity (Crim. D.E. 206).

        On October 3, 2007, the sentencing hearing for Quiñones-Medina was held (Crim. D.E. 208). The Court imposed a sentence of one hundred and fifty one (151) months as to each of counts one and two, to be served concurrently with each other, as well as a term of Supervised Release of five (5) years as to Count one (1) and of four (4) years as to Count two (2) to be served concurrently with each other. A Special Monetary Assessment of one hundred dollars ($100) as to each count for a total of two hundred dollars ($200) was also imposed (Crim. D.E. 212).

        On October 13, 2007, Quiñones-Medina filed a Notice of Appeal (Crim. D.E. 210). On January 13, 2009, the Judgment of the Court of Appeals for the First Circuit affirming Petitioner's conviction was entered (Crim. D.E. 234). Petitioner did not file a Writ of Certiorari and, therefore, his conviction became final on April 13, 2009. On November 25, 2009, Petitioner filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, which is timely. As such, the case is ready for disposition.

II.    DISCUSSION

        In his § 2255 Petition, Quiñones-Medina raises a hodgepodge of claims of ineffective assistance of counsel against trial, sentencing and appeal counsels as well as other issues. All will be discussed by this Court in the following manner: those claims raised and settled on appeal (issues one (1), ten (10) and eleven (11)); claims regarding ineffective assistance of trial counsel ( issues two (2) through eight (8)); claims regarding ineffective assistance of

CIVIL 09-2198CCC                                    5

appellate counsel (issue nine (9)); and allegation of new evidence (issue twelve (12)).  In chronological order the allegations raised by Quiñones-Medina as stated in his Petition are as follows:

1.   Counsel was ineffective for failure to present testimony of the doctors that treated him since 1997 in order to establish Petitioner's diminished capacity.

2.   Counsel was ineffective for failure to challenge the "illegal" search of the vehicle where the cocaine was found.

3.   Counsel was ineffective for failure to submit alleged menacing letter from co-defendant.

4.   Counsel was ineffective for forcing Petitioner to accept and sign the trial stipulation as to the testimony of the drug chemist.

5.   Counsel was ineffective for failure to use an independent chemist to prove that the cocaine seized was another substance.

6.   Counsel was ineffective for failure to raise an entrapment defense.

7.   Counsel was ineffective for failure to provide Petitioner with the Pre Sentence Report.

8.   Counsel was ineffective for failure to challenge the Indictment because co-defendant was sentenced to a lesser amount of narcotic.

9.   Counsel was ineffective at the appellate level for failure to allege the ineffectiveness of his two prior trial counsels.

10.  Allegation of Court error for its denial of a psychiatric evaluation because, during his incarceration in Virginia, Petitioner was diagnosed with "TEPT" disorder.

11.  Allegation of Court error for its application of a two (2) level firearm enhancement to his sentencing calculation, which Petitioner alleges is contrary to Booker.

CIVIL 09-2198CCC                                    6

12.    Allegation of new evidence relating to charges against Petitioner at the local
       level which resulted in his expulsion form the Municipal Police of Carolina[4]
       (Crim. D.E. 1).

**A.    28 U.S.C. Sec. 2255 Standards and Exhaustion Requirements**

Section 2255 allows a federal prisoner to move the court to vacate, set aside, or correct his sentence if one of the following events happen:

1.    the sentence was imposed in violation of the Constitution or laws of the United
      States,

2.    the court was without jurisdiction to impose the sentence,

3.    The sentence was in excess of the maximum authorized by law,  or

4.    The sentence is otherwise subject to collateral attack.

When a prisoner files a motion for relief pursuant to Section 2255, the court may dismiss the motion without an evidentiary hearing if "the motion and files and records of the case show conclusively that the movant is not entitled to relief."

It is well settled law that a Section 2255 motion is not a substitute for an appeal. Therefore, the defendant must first raise his claims on direct appeal before bringing the claim in a Section 2255 motion.  United States v. Essig, 10 F.3d 968 (3d Cir. 1993).  If a defendant fails to preserve his claim on direct appeal, a court may not consider the claim in a subsequent Section 2255 motion unless the defendant can establish "cause and prejudice", United States v. Frady, 456 U.S. 152, 167 (1982); or a "fundamental miscarriage of justice."  Murray v. Carrier, 477 U.S. 478, 496 (1986).  The exception to the exhaustion requirement is the allegation of ineffective assistance of counsel which may be brought for the first time in a Section 2255 motion.

---

[4]The Court has listed all twelve (12) arguments as listed by Petitioner in his motion. As previously stated for the purpose of this Opinion some will be consolidated as they refer to related matters.

CIVIL 09-2198CCC                          7

1.      **Previously settled claims (issues 1, 10 and 11)**

Claims which have been previously settled on direct appeal cannot be revisited through a collateral proceeding. Withrow v. Williams, 507 U.S. 680 (1983). Furthermore, claims that have been previously addressed on direct review may not be re-adjudicated collaterally under Section 2255 absent equitable considerations, such as innocence or cause and prejudice Berthoff v. United States, 308 F.3d 124 (1st Cir. 2202). Such is not the case of Quiñones-Medina.

Quiñones-Medina alleges that his counsel at the trial level did not provide effective assistance because he failed to present testimony of health professionals that were treating him in order to establish his diminished mental capacity. He further contends that the Court erred in its denial of appointment of a psychiatric expert.

The issue of Petitioner's mental health, or lack thereof, and its role in the sentencing guideline calculation was raised on appeal and ruled upon by the First Circuit Court. Its position on the matter was as follows:

> When medical evidence suggesting diminished mental capacity is either weak or not present at all, a psychiatric expert need not be provided. See United States v. Mastera, 435 F.3d 56, 62-63 (1st Cir. 2006).

> We see no abuse of discretion here. The record makes pellucid that the trial court reviewed all the relevant psychiatric records before imposing sentence. These included the report of Dr. Luis Humberto Negrón-Delgado (Dr. Negrón) of the State Insurance Fund (SIF), a translated version of which was attached to the appellant's sentencing memorandum (filed on December 5, 2006).

> In finding no diminished mental capacity, the court determined that the report confirmed a diagnosis of depression without showing how (if at all) the condition affected the appellant's ability either to tell right from wrong or to control his actions.

> The court subsequently revisited Dr. Negrón's report when deciding whether to appoint (or, more exactly, to authorize funds for the defense to hire) a psychiatric expert. In an order dated May 6, 2006, the court requested all medical records from the Metropolitan Detention Center (MDC) and the SIF. At the time, the court informed the appellant and his lawyer that, should they have any other pertinent information or records, they should submit them promptly. After reviewing the collected records, the court, in an order dated May 1, 2001, declined to authorize funds for the defense to hire a psychiatric expert.

CIVIL 09-2198CCC                              8

> The short of it is that the district court, on numerous occasions, implored the appellant to show a link between his psychological problems and some diminished mental capacity.  The appellant never did.  The court then reviewed all the available records and found that the appellant's mental condition did not bear materially on the sentence that he deserved . . . . it was within the realm of the district court's discretion to conclude that the appointment of a psychiatric expert most likely would have been an exercise in futility.

United States v. Quiñones-Medina, 553 F.3d 19 at pages 24-26 (1st Cir. 2009) (emphasis ours).

A reading of the First Circuit Court's analysis and decision of the mental health issue leaves no doubt that the same claims now raised by Quiñones-Medina were previously raised and resolved on appeal.  It is well settled law that as such they can not be reviewed by this Court.

In a collateral attack, the petitioner is barred not only from re-litigating issues already rejected upon direct appeal, but also from litigating issues which could have been, but were not raised in direct appeal, absent an intervening change in the law.  Davis v. United States, 417 U.S. 333 at 342 (1974).  Thus, issues raised on direct appeal and already resolved, as well as those considered waived, are barred in post-conviction motions.  United States v. Escobar- de Jesús, 187 F.3d 148 at 159-162 (1st Cir. 1999).  Therefore,  allegations one (1) and ten (10) are barred from review by this Court and are DENIED.

A second issue raised by Quiñones-Medina in his appeal and in his 2255 petition was the allegation of Court error for its application of a two (2) level firearm enhancement to his sentencing calculation, which according to Quiñones-Medina is contrary to Booker.  Once again, Petitioner is precluded for raising this issue in a collateral review such as his 2255 petition.  As to this allegation the First Circuit stated as follows:

> Where a firearm has been found at the scene during a drug deal, the enhancement should apply "unless it is clearly improbable that the weapon was connected with the offense."  United States v. Sandoval, 204 F.3d 283, 287 (1st Cir. 2000).

> That connection may be, among other things, the weapon's utility for protection of the drugs, the trafficking operation, or the proceeds of the

CIVIL 09-2198CCC                                        9

operation. See United States v. Castillo, 979 F.2d 8, 10 (1st Cir. 1992); United States v. Corcimiglia, 967 F.2d 724, 727 (1st Cir. 1992).

In this instance, the sentencing court supportably could find that the appellant and Rivera-Quiles conspired to sell five kilograms of cocaine for $80,000 in a two-stage transaction.

They arrived at the agreed rendezvous point for the first stage in separate cars, but parked within fifteen feet of each other. They were arrested on the spot and, in an ensuing search of Rivera-Quiles's car, agents discovered a loaded and easily accessible handgun under a floor mat.   Given the substantial value of the contraband and the risks inherent in dealing with a little-known purchaser, we discern no clear error in the district court's finding that the appellant either knew or reasonably should have foreseen that his coconspirator would be armed.

We are unpersuaded by the appellant's self-serving assurance that he was purposely kept in the dark about "the possession, knowledge or foreseeability of a weapon for the drug transaction."

To corroborate this assurance, he points to Rivera-Quiles's statement that he possessed the gun "[j]ust in case I needed it for something, you know how things are on the street." Viewed in context, that statement is cold comfort to the appellant.

First and foremost, the statement is consistent with the sentencing court's rationale.  After all, one of the things that happens "on the street" is the theft of drugs during the course of illicit trafficking.  See e.g. United States v. Beasley, 442 F.3d 386, 388 (6th Cir. 2006); Chia v. Cambra, 360 F.3d 997, 1013 (9th Cir. 2004); United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002). One is reminded of the drollery, sometimes attributed to P.G. Wodehouse, that "[t]here is no honor among thieves."

In any event, even the appellant's interpretation of the statement does not provide him with a safe harbor".

United States v. Quiñones-Medina, 553 F.3d 19, 24 (1st Cir. 2009).

In its opinion the First Circuit Court left no doubt as to the foreseeability of the handgun and the correct application of the two point enhancement.   Once again, Quiñones-Medina cannot raise issues in his Section 2255 petition which were previously raised and resolved on appeal.  At the risk of sounding redundant, it is well settled law that as such they can not be reviewed by this Court.  Therefore, allegation eleven (11) is also barred from review by this Court and DENIED.

CIVIL 09-2198CCC                                    10

### B.    Claim of Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a defendant must show that:

1.    His attorney's performance was deficient, and

2.    The deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).

In order to establish deficiency, a defendant must establish that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." Strickland 466 U.S. at 688.  Under Strickland, counsel is presumed to have acted within the range of "reasonable professional assistance," and it is defendant who bears the burden of "overcoming the presumption that, under the circumstances, that challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. To show prejudice, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Thus, it is pellucidly clear that Petitioner was obligated to show both that counsel's performance fell below an objective standard of reasonableness and that prejudice resulted from it.   Strickland, 466 U.S. at 687.   See also López-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990).  He must do this as to each particular instance in which he claims ineffective assistance of counsel.  Counsel's performance must be examined "not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented." United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1992).  The "range of reasonable professional assistance" is quite wide.  See Strickland, 466 U.S. at 689.  Therefore, the Supreme Court has stated that "judicial scrutiny of counsel's performance must be highly deferential." See Strickland, 466 U.S. at 689.

CIVIL 09-2198CCC                                    11

Under <u>Strickland</u>, Petitioner is required to identify acts or omissions by counsel which need to be outside the wide range of professional competent assistance and the harm such actions caused.   Nevertheless, Quiñones-Medina has used the venue of a Section 2255 petition to raise a hodgepodge of alleged instances of ineffective assistance to see if by chance or perhaps luck this Court agrees with him.   Petitioner fails in his endeavor. Petitioner's allegations are either underdeveloped or unsupported by the record and mere blanket assertions of ineffectiveness which this Court finds hard to evaluate.

**1.   Ineffective Assistance of counsel for failure to challenge the allegedly illegal search of the vehicle (issue two)**

The facts as proven at trial established that Petitioner and his coconspirator delivered one (1) kilogram of cocaine as a first installment of a multi-kilogram load they had agreed to sell.   With the delivery of this first installment, the government sprung the trap. <u>Quiñones-Medina</u> at 21-22.

Petitioner alleges that his trial counsel should have challenged the search of the car where the cocaine was found which Petitioner contends was illegally done, since according to Petitioner, the cocaine was not in plain view.   Therefore, Petitioner alleges that the search of the vehicle violated his Fourth Amendment Right against unreasonable search and seizure.   Quiñones-Medina's claim is not supported by the record.

The facts are that Quiñones-Medina and his co-defendant conspired to sell five (5) kilograms of cocaine for $80,000 in a two stage transaction.   Both co-defendants arrived, in separate cars but parked within fifteen feet of each other,  at the agreed rendezvous point for the first stage <u>Quiñones-Medina</u> at 24.   Quiñones-Medina made the first stage delivery of a kilogram of cocaine, and was arrested on the spot along with his co-defendant (Trial Transcript of 12/13/2005 at pages 41-42).   Subsequent to the arrest of both defendants their cars were seized and inventoried, and the drug was processed (Trial Transcript of 12/14/2005 at pages 62-62 and 71).

CIVIL 09-2198CCC                                      12

Clearly, the search of the vehicle was done incidental to an arrest where there was ample probable cause of a felony being committed, i.e. the drug transaction.  In addition, the Supreme Court has held that an automobile may be searched without a warrant if the police has  probable cause to believe that it contains contraband, evidence of a crime, or other matter that may lawfully be seized, United States v. Ross, 456 U.S. 798 (1982).  A review of the trial transcripts clearly demonstrate that the agents in this case had probable cause to believe that there would be evidence of a crime in the automobile.  The agents were in place to arrest Quiñones-Medina and his co-conspirator once the drug transaction occurred precisely because the defendants had been under investigation for the acts for which they were later arrested, indicted and convicted of.

There can be no allegation of ineffective assistance of counsel for counsel's failure to argue what would be construed as nothing more than a meritless argument.  Therefore, allegation number two (2) of ineffective assistance of counsel for failure to challenge the search of the vehicle is DENIED.

**2.      Ineffective Assistance of Counsel for failure to submit alleged menacing letter - impeachment (issue three)**

Quiñones-Medina alleges that his trial counsel was ineffective because he failed to submit into evidence a supposed menacing letter sent to him by his co-defendant. According to Petitioner, his co-defendant would have testified as his witness at trial and he could have been impeached by Quiñones-Medina's attorney with the menacing letter.  The same would have shown that co-defendant's testimony lacked credibility and that he acted contrary to his word; he was collaborating with the government.  This argument is so far fetched that the Court has trouble even explaining it.

A review of the trial transcripts establishes that Quiñones-Medina's co-defendant did not testify at trial; nor did he testify on behalf or against Quiñones-Medina at any stage of the proceedings.  Which begs the question: how can Petitioner's trial attorney be ineffective

CIVIL 09-2198CCC                                    13

for failure to impeach a witness that never testified?  Therefore, Petitioner's allegation of

ineffective assistance of counsel for failure to impeach a non existing witness is DENIED.

> **3.      Ineffective Assistance of Counsel for forcing Petitioner to accept and sign a trial stipulation related to the drug chemist. (issue four).**

Quiñones-Medina alleges that his trial counsel forced him to accept and sign a

stipulation as to the actual drug weight of the kilogram of cocaine occupied from his vehicle.

Stipulations are a common occurrence amongst the parties in a drug related trial in order

to avoid the testimony of additional witnesses.  A review of the trial transcript does not

support Petitioner's allegation.

The Court: Has the stipulation been filed?

AUSA Massucco: Yes, Your Honor.

The Court: Is it signed by the Defendant?

AUSA Massucco: It's signed by all parties, Your Honor.

Atty. Gonzalez: Your Honor, for the record, I read the same in Spanish to the Defendant, explaining his right to have the chemist be here, both chemists, and he agreed to sign the same and did so in my presence.

The Court: Mr. Quiñones-Medina, good afternoon, sir.  Mr. Quiñones, I have before me a stipulation regarding the testimony of Lannette Allison and Enrique Piñeiro, forensic chemists from the Drug Enforcement Administration, regarding the analysis of narcotics that they tested, and the result of those analyses, which reveal, according to paragraph 3, the brick of alleged narcotics had a gross weight of 1.077 kilograms or 1,077 grams, and the net weight of 976.3 grams.   That was a brick of narcotics received on September 24, 2004.

Before that it states that on July 23, 2004, the other witness, Enrique Piñeiro, received from DEA Special Agent Lynette Delgado a small amount of alleged narcotics with a gross weight of 24.6 grams and a net weight of .40 grams.

It is also stipulated that these two witnesses, Lannette Allison and Enrique Piñeiro, are employed with the Department of Justice, Drug Enforcement Administration, as forensic chemists and that they are experts in the field of analysis of narcotics.

And finally, that the forensic analyses that they conducted in these amounts of narcotics, reveal that they were in fact cocaine hydrochloride in the stated weights.

CIVIL 09-2198CCC                          14

> Do you understand the stipulation that you signed this afternoon regarding the testimony at trial of Lannette Allison and Enrique Piñero, DEA forensic chemists?
>
> The Defendant: Yes, Your Honor.
>
> The Court: Did you sign this stipulation regarding the testimony of these two forensic chemists of your own free will?
>
> The Defendant: Yes, Your Honor.
>
> The Court:  Do you fully understand the testimony that is set forth herein?
>
> The Defendant: Yes, Your Honor.

(Trial Transcript of 12/13/2005 at pages 71-73).

The time to raise the issue of being forced or coerced into signing said stipulation was when asked by the Court.  Petitioner did not do so, nor did he object to the signing of the stipulation.   He raised the issue of the stipulation for the first time in this collateral proceeding.  As stated before, in a collateral attack a Petitioner is barred not only from re-litigating issues already rejected upon direct appeal, but also from litigating issues which could have been, but were not raised in direct appeal absent an intervening change in the law, Singleton v. United States, 26 F.3d 233 (1st Cir. 1994).  Not only is Petitioner barred from raising the issue of the stipulation and coercion or lack thereof; it is simply not sustained by the record.

Therefore, Petitioner's allegation of ineffective assistance of counsel regarding the stipulation as to the chemist testimony is DENIED.

### 4.    Ineffective Assistance of Counsel for failure to use a chemist to prove that the cocaine seized was another substance (issue five)

Petitioner continues with the theme of the chemist and the stipulation as to the narcotics by alleging that his counsel was ineffective because he did not bring forth the testimony of a chemist to establish that the drugs seized were not cocaine.  In addition, he alleges that by signing the stipulation Petitioner's attorney forced him to accept responsibility

CIVIL 09-2198CCC                           15

for the quantity of drugs stated in the stipulation and that the laboratory reports provided were hearsay evidence.  Once again this Court is at a loss as to this allegation.

The recommendation to stipulate the nature and quantity of drugs was a tactical choice.  It is unlikely that in a typical drug case defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt upon forensic analysis. Meléndez-Díaz v. Massachusetts, 557 U.S. 305(2009).  Therefore, counsel's advise was a reasonable strategic decision that does not warrant a finding of ineffective assistance of counsel.

Petitioner further argued that the kilo of cocaine occupied was not brought to Court and that all that was brought was a small sample taken from the kilo.  It is common practice in drug related cases to bring forth a sample amount of the drug seized particularly when there is a stipulation already signed by all the parties.

We are left to wonder as to what exactly Petitioner believes an independent chemist would determine the substance to be other than cocaine.[5]  There is complete lack of evidence as to even a remote possibility that the substance in question and that for which Petitioner is charged with is not cocaine.  Simply put, this allegation is preposterous.

Therefore, Quiñones-Medina's allegation of ineffective assistance of counsel for failure to use a chemist is DENIED.

**5.     Ineffective Assistance of counsel for failure to raise an entrapment defense (issue six)**

Quiñones-Medina alleged that his counsel failed to raise the entrapment defense, as he had no intention of committing the crime and it was the government who induced him to participate in the charged conduct.

---

[5]The Court remains bewildered as to what would be the benefit or advantage to Quiñones-Medina if at trial the Government would have brought before the jury the complete amount of cocaine instead of a sample.

CIVIL 09-2198CCC                                16

In order to successfully raise and argue an entrapment defense, Petitioner must meet a two prong test.  First, he must be able to prove improper government inducement to commit the crime; and second, that he lacked the predisposition to engage in such criminal conduct.  United States v. Gamache, 156 F.3d 1 (1st Cir. 1998).  The record does not assist Petitioner in this claim.

> The record indicates that the appellant met Rivera (the undercover agent) on August 5, 2004.  He was introduced to the agent as an "associate" of Rivera-Quile's.  From that point forward, he played an active role in the cocaine sale negotiations.  In that capacity, he attended at least two face-to-face meetings with the putative purchaser, during which the participants discussed not only the planned sale of five kilograms of cocaine but also the possible transport of even larger quantities of contraband from St. Thomas to Puerto Rico.

United States v. Quiñones-Medina, 553 F.3d 19, 23 (2009).

This was the finding of the First Circuit Court of Appeals upon review of Petitioner's case.  Clearly, Petitioner can not meet the two prong requirement of entrapment when faced with the evidence against him.

Therefore, Quiñones-Medina's claim of ineffective assistance of counsel for failure to raise an entrapment defense is DENIED.

**6.      Ineffective assistance of counsel for failure to provide Petitioner with the Pre Sentence Report (issue seven)**

Petitioner alleged that his counsel was ineffective in that he did not provide him with a copy of the revised Pre Sentence Report.  Once again, the record does not support Petitioner's allegation.

Quiñones-Medina's Pre Sentence Report was filed on April 13, 2006, (Crim. D.E. 144).  On April 18, 2006, Petitioner, through his then counsel, filed objections to the Pre-Sentence Report (Crim. D.E. 147).  In the interim, Quiñones-Medina filed pro-se motions to terminate his attorney and requested the appointment of new counsel (Crim. D.E. 148, 151, 152).  While that was pending, in compliance with a prior Court order, on June 7, 2006 the Government filed its Response to Quiñones-Medina's objections to the

Pre Sentence Report (Crim. D.E. 157). On September 14, 2006, the Court issued an Order granting in part and denying in part the objections to the Pre Sentence Report (Crim. D.E. 164). On September 28, 2006, the U.S. Probation Officer notified that the appropriate changes, pursuant to this Court's prior order, had been made to the Pre-Sentence Report (Crim. D.E. 165).

On November 14, 2006, Petitioner's counsel filed a sentencing memorandum requesting a downward departure (Crim. D.E. 173). On November 16, 2006, the Court issued an order to the BOP[6] instructing that it shall submit all records of Petitioner's mental treatment. On December 21, 2006, the Court issued an Order denying Quiñones-Medina's request for a downward departure (Crim. D.E. 182). On that same date the Court granted Petitioner's request for new counsel and ordered that a new Court appointed counsel be designated for Quiñones-Medina (Crim. D.E. 183).

On December 31, 2006, Petitioner's new counsel filed his notice of appearnce in the case (Crim. D.E. 185). New counsel once again tried to raise the issue of Petitioner's mental health and filed a series of motions on the matter. All this was done by counsel in order to try to obtain a more favorable sentence for Quiñones-Medina. At no time were there any additional changes or modifications made to Petitioner's Pre-Sentence Report aside from those previously ordered by this Court. The record reflects that there was no amended report filed, as alleged by Petitioner.

Finally, after much haggle the Sentencing Hearing was held on October 3, 2007. The transcript of said hearing reflects the following:

> The Court: Now I ask defense counsel if you fully discussed with your client the contents of the probation officer's report and the Court's ruling on the objections raised.
>
> Mr. Rivera: Yes, Your Honor.

---

[6]BOP is the abbreviation for Bureau of Prisons.

CIVIL 09-2198CCC                                    18

The Court: And, Mr. Quiñones, did you understand what your counsel explained to you regarding the probation officer's report in this case?

The Defendant: Your Honor, the last pre sentence report, the amended report, I have never read that.

The Court: Counsel?

Mr. Rivera: Your Honor, I explained him (sic) the last report.  He is perhaps confused, because when I saw him last week I thought that there was another report after the one filed on September 29, 2006.  After meeting with the U.S. Probation Officer, that's the last report filed in this case, and he already had that opportunity.

The thing is that I met him last week, and since – last week we haven't talked up to today, and I believe he's a little bit confused regarding that matter. Because we – when I talked with him last week, I didn't know if there was to be filed another or a new presentence report.

However, so far, up to this date, he has been able to sit and discuss it with me, your Honor.

The Court: So, it is your representation to the Court that you reviewed the pre sentence report, the initial one and the amended one with the defendant?

Mr. Rivera: Yes, Your Honor.  I am in this case since January, and since January of this year I have been able to meet with my client on numerous occasions, and we have discussed grossly this case, your Honor.

I believe that his concerns regarding this case have been presented to the Court and the Court has already ruled about it, so I believe that we are ready to go on.

The Court: There is no doubt that the record reflects what you have said, that you have raised all matters pertinent to the sentence before the actual sentencing hearing.

Now, Mr. Quiñones-Medina, you heard your attorney that both reports were explained to you and discussed with you.  What do you have to say about that?

The Defendant: No response.

The Court: Your attorney has said that he discussed both reports of the probation officer with you.

(Whereupon, Mr. Rivera confers with the defendant).

The Defendant: Yes, your Honor.

CIVIL 09-2198CCC                                     19

> The Court: Do you accept as correct what he has stated, that he has fully explained to you everything that was reported by the probation officer in the initial report and in the amended report?

> The Defendant: Yes, your Honor.

(Transcript of Sentencing Hearing of 10/3/2007 at pages 44-46).

Simply put, the record contradicts Quiñones-Medina's claim.  Furthermore, he has presented no evidence nor has he put this Court in a position to believe anything other than what the record clearly established.  Quiñones-Medina reviewed the original pre sentence report and the corrected report.  No other reports were prepared and all information was disclosed and discussed with Petitioner.

Therefore, Quiñones-Medina's allegation of ineffective assitance of counsel for failure to disclose the amended pre-sentence report is DENIED.

**7.     Ineffective Assistance of counsel for failure to challenge the Indictment (issue eight)**

Petitioner alleges that his trial counsel was ineffective for failure to challenge the Indictment against him.  He based this allegation on the assertion that his codefendant was held responsible and therefore sentenced to a lesser amount of cocaine than he was.  As such, Quiñones-Medina alleges that the charge of conspiracy to possess with the intent to distribute five (5) kilograms or more of cocaine can not prosper; because of his co-defendant being held responsible for a lesser amount.  This Court is at a loss for words.

On September 30, 2005, Petitioner's co-defendant pled guilty to all counts of the Indictment pursuant to a Plea Agreement entered into under Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure (Crim. D.E. 100).   In said agreement, Quiñones-Medina's co-defendant was held responsible for at least two hundred (200) but less than three hundred (300) grams of cocaine (Crim. D.E. 100).  At no time did this stipulation affect the Indictment as charged nor did it have an impact of the amount of cocaine charged to Petitioner.  Therefore, Petitioner's allegation of ineffective assistance of counsel for failure to challenge the Indictment is denied.

CIVIL 09-2198CCC                              20

        **8.      Ineffective assistance of counsel at the appellate level (issue nine)**

        Quiñones-Medina alleges that his counsel on appeal was also ineffective. This time
he claims that his counsel failed to first raise on appeal the ineffectiveness of his two prior
trial counsels; and that she failed to argue on appeal all the claims that his trial counsels did
not raise at trial or sentencing and if done would have resulted in a reversal of his
convictions.

        Claims of ineffective assistance of appellate counsel are measured under the
Strickland standard. Evitts v. Lucy, 469 U.S. 287(1985). Appellate counsel is not required
to raise every non-frivolous claim, but rather select among them to maximize the likelihood
of success on the merits. Lattimore v. Dubois, 311 F.3d 46 (1st Cir. 2002).

        Where appellate counsel is charged with ineffectiveness for failure to raise a
particular claim, "it is difficult to demonstrate that counsel was incompetent." Smith v.
Robbins, 528 U.S. 259 at page 288 (2000). To overcome the presumption of competence
of appellate counsel, a petitioner must show that the omitted issues were "clearly stronger"
than those counsel chose to assert. Quiñones-Medina has not made such a showing.

        Quiñones-Medina accepts that counsel studied the arguments presented by him and
rejected them because she considered that the same lacked merit (docket entry 1,
Exhibit 2). Strategic choices made after thorough investigation of law and facts relevant to
plausible options are virtually unchallengeable; and strategic choices made after less than
a complete investigation are reasonable precisely to the extent that reasonable professional
judgments support the limitations on investigation. Strickland, 466 U.S. at 689.

        In the case at hand, all indications are that appellate counsel conducted a thorough
review of all that was presented to her regarding the case and she briefed those arguments
which she in her professional judgment thought had the best opportunity to succeed on
appeal. Furthermore, counsel cannot be blamed for failure to raise what amount to

CIVIL 09-2198CCC                        21

meritless arguments that would do nothing more than waste the Court's time. <u>Jones v.</u> <u>Barnes</u>, 463 U.S. 745 (1983).

Therefore, Quiñones-Medina's allegation of ineffective assistance of appellate counsel is DENIED.

### 9.      **Allegations of new evidence (issue twelve)**

Finally, Quiñones-Medina alleges that he provided appellate counsel with new evidence relating to the charges that resulted in his expulsion from the municipal police of Carolina.  This information, of his expulsion, was included in Petitioner's Pre Sentence Report. Petitioner contends that he was exonerated from the administrative charges against him since they were nothing more than a political vendetta.  Quiñones-Medina faults appellate counsel for not raising this claim on appeal.  This, according to him, would have made a difference in his conviction.

Assuming Petitioner's allegations of exoneration are true, this Court fails to see how they would have benefitted him in this case.  There is no correlation amongst the two.  The outcome of the local administrative process against Quiñones-Medina has no bearing or effect or influence on his charges and subsequent conviction for drug trafficking.  They are two separate matters.

Therefore, Quiñones-Medina's allegation of new evidence is DENIED.

### III.    **CONCLUSION**

The Court has gone through the painstaking process of evaluating and analyzing each individual claim raised by Quiñones-Medina, by conducting a meticulous review of the record. After such review, the Court can only reach one conclusion: Quiñones-Medina's claims of ineffective assistance of counsel at all levels fail.

For the reasons stated, the Court concludes that Petitioner REY FRANCISCO QUIÑONES-MEDINA's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct

CIVIL 09-2198CCC                                        22

Sentence (**docket entry 1**) lacks merit and is, therefore, DENIED.  Furthermore, Petitioner's

request for an evidentiary hearing is also DENIED.  Judgment will be entered accordingly.

SO ORDERED.

At San Juan, Puerto Rico, on January 31, 2012.


S/CARMEN CONSUELO CEREZO
United States District Judge